Good morning, everyone. We have six cases on today's argument calendar, and we'll begin with three, four consolidated appeals. Numbers 24, 33, 17, 25, 1072, 25, 1076, and 25, 11, 12. Illinois Tamale Company v. LC Trademark and others. Mr. Handelman, nice to see you. Whenever you're ready. May it please the Court, my name is Jeff Handelman, representing Little Caesars. The outcome here turns on three primary determinations. First, are the plaintiff's alleged trademarks valid? If not, the plaintiff cannot prevail on the merits. Second, if the marks are valid, can the plaintiff show likelihood of confusion? If no likelihood of confusion, the plaintiff cannot prevail on the merits. And lastly, does the defendant's use of the phrase for handheld pizza puffs constitute fair use under the Lanham Act? Fair use as an affirmative defense overcomes a claim of infringement. Turning first to the issue of validity, the district court applied an incorrect legal test of genericness. Before you get to that test, you have correctly pointed out that the standard for a preliminary injunction for likelihood of success is not better than negligible. Is it your position that the district court applied the better than negligible as opposed to the more than a mere possibility of success? It's hard to tell from the opinion. Yeah, under the Grubhub case, this court clarified the standard for satisfying. Yes, I don't disagree with you on that. But I can't tell if you are arguing that the district court applied the wrong preliminary injunction standard at the outset or if you are not contesting the standard, that standard that the court applied. Yeah, I would have to go back and read the opinion. Okay, that's fair. Maybe on rebuttal you should let me know. Very well, thank you, Your Honor. But what we do contend is that because there was an error of law as to the test of genericness that was applied, that this court should correct that error of law and reverse the finding of genericness. In particular, the statutory test under the Lanham Act is what is the primary significance of the term in dispute. And that's the test that this court has consistently applied. However, the test the district court used was whether the term in question is quote, the exclusive descriptor of the goods. That language came out of dictum. If we agree with you on that legal test, do you automatically win? Don't we have to continue to go through and look at the other elements? Well, yes. If the correct test is applied, the primary significant test, it's our position that the evidence overwhelmingly shows that the marks at issue are generic. And so, for example, if the correct test had been applied, the primary significance test, we submitted a consumer survey measuring the primary significance of the terms pizza puff and puff. And in that consumer survey, 83.3% of the respondents perceived pizza puff as generic. Only 12.7% perceived pizza puff as a brand. And likewise, in the puff survey, 80.3% of the respondents perceived puff as a generic term, whereas only 14.7% perceived it as a brand. Mr. Handelman, you are appealing the puff determinations by the district court as well, but you're here on an appeal on a preliminary injunction, and the court actually denied the preliminary injunction as to puff. The court granted it as to pizza puff, but unless I'm missing something or there's an order that wasn't here, the court denies plaintiff's motion based on the defendant's alleged infringement of the puff mark. So I was a little confused why you're appealing that or how you can appeal that. We were appealing from the grant of the preliminary injunction as to four handheld pizza puffs. We were enjoined from using four handheld pizza puffs in connection with the product, and so we brought our appeal. I understand that, but you also have a section dealing just with puffs and arguing that puffs is generic, that the district court got that wrong. But I'm not sure, given that you're here on a preliminary injunction appeal and the court denied the appeal as to puffs, how you can bring that aspect of the appeal. Well, I think that what the court said, it found no likelihood of confusion as to puff and the phrase, but it found likelihood of confusion as to pizza puff and the phrase, if I recall correctly. That's correct. And so we're appealing from the grant of the injunction, and we're saying that the injunction should have been denied, first because both pizza puff and puff are generic. But I guess that's the question, the puff piece of it, because pizza puff goes together. Yep. There were several challenges below to pizza puff and to puff, and the blue brief makes an argument that the district court erred as to puff, and I'm just not sure how you can bring that, given that you prevailed on that aspect of the preliminary injunction. Well, we also believe that the injunction as to the phrase for handheld pizza puffs should be reversed because both marks are generic, putting aside the issue of confusion. If you find both pizza puff and puff generic as a threshold matter, the court doesn't even have to reach the issue of confusion. So our primary position. Can I tell you what I heard? Can I try the same question?  Okay. I think you should correct me if I'm wrong, though, okay, and your adversary can do the same. I think the reason that I understand from the briefs, I'm confused on the same point, okay. I think the reason that you're arguing as to both pizza puffs and puff or puffs is because your adversary is taking a position, they're both protected, and so what you're doing is you're advancing an argument that's addressing both marks, including the use of puff in isolation in the phrase for handheld pizza puffs. Is that correct? That's correct. That's why there's a portion of your brief that is isolated to the word puffs. That's correct, Your Honor. As to the question of confusion, but then also because the court granted the injunction as to the phrase, we're saying that injunction should be reversed, there's no confusion, but also that injunction should be reversed because the underlying asserted marks are both not legally protectable, and so the court erred in not finding that those terms are generic because that's a threshold issue. If the court finds that both pizza puff and puff are generic, the plaintiff cannot prevail on its claims irrespective of confusion. But if we just find puff as generic, that's not sufficient for you to prevail. We have to address pizza puff because that's what the injunction was about. Correct. I'm sorry. Our position is that both marks are generic. They're both dictionary words that are defined in the dictionary. There were separate surveys on each mark showing over 80%. That's where I want to go now. You were headed there before, the survey results. Is your contention with the way the district court handled the survey results, the district court said the results were compelling but then found that they did not win the day. Was that move, in your view, legal error or some sort of factual error, the court's response to the survey results? I think the response to the survey results ties in with the incorrect legal test that was applied. Had the court applied the primary significance test, the primary significance survey results would have directly supported a finding of genericness because the court found the survey was compelling, a factual finding. But because the court applied an incorrect legal test, this are there other terms available, the survey was given inadequate weight and we believe that under the correct legal test of primary significance that the primary significance survey of over 80% of this is a common term, not a brand, overwhelmingly establishes genericness. So we see a direct link between the legal error in the standard and the treatment of the survey results. But we think that the court's finding that the survey was compelling and bear in mind that the plaintiff retained a marketing expert to critique the survey and also Hal Porrett, the gentleman who conducted the survey, testified at the hearing at length in front of the district judge. So the district judge had a chance to question the expert witness, review the criticisms that the plaintiff came forward with and still found the survey to be compelling, a factual finding with which we agree, but the legal error we believe caused the survey to be given inadequate weight. With respect to briefly finishing up on validity, so we have the survey but that's not all. We have industry use evidence showing that both Pizza Puff and Puff are extensively used in a generic fashion in the restaurant and food industry and in Miller Brewing and in the Warehouse Shoes case, which Judge Flom authored, industry use of this type was given weight where this court found the terms at issue generic. We also have dictionary definitions which are not required, as the court knows, for a finding of genericness. But when you have a common English word in a dictionary with a definition encompassing the goods at issue, that's compelling evidence of genericness as well. So it's our position that this evidence taken together establishes an insuperable obstacle. That's what Miller Brewing called genericness, an insuperable obstacle to a plaintiff's trademark infringement claim. And then turning to confusion, the district court correctly found no likelihood of confusion between plaintiff's marks and Krazy Puffs but erred in its analysis of confusion as to the phrase. First, addressing the Krazy Puffs mark. The district court correctly applied the law of this circuit that the dominant portion of the mark should be given greater weight in the analysis. Here, Puffs as part of the Krazy Puffs mark is disclaimed. The trademark office required us to disclaim it as an unregisterable component. But not only the disclaimer. We have the same evidence on the validity part of the case. The industry use of Puff in a generic fashion, the dictionary definitions of Puff encompassing these goods. A Puff, it's not that the product is puffy. It's a Puff is essentially it's a noun that refers to a small dough-based food item that is typically filled with ingredients that can be either sweet or savory. Thank you. And so just to wrap up on confusion, the dominant portion is Krazy. Puff is disclaimed. It's defined in the dictionary. Krazy builds on the goodwill Little Caesars has and the Krazy Bread and Krazy Sauce and Krazy Combo marks. It has many Krazy marks. Viewed as a whole, the district court correctly viewed the marks as a whole, gave dominant weight to Krazy and found that while the plaintiff's mark began with the descriptor of the food item and end with Puff, in contrast, defendant's use of Krazy sets it apart from plaintiff's Pizza Puffs mark and ties it to defendant's Krazy marks, no confusion. And likewise, the district court found no confusion between Krazy Puffs and Puff, saying Krazy Puff creates a different commercial impression than Puff alone because it implies something more, particularly when used with the defendant's trade dress, the Roman man, the orange trade dress, and so forth. So for all of those reasons, the district court correctly found no likelihood of confusion, and that finding is not clearly erroneous and should be affirmed. And I'd like to reserve my remaining time for rebuttal. Okay. Very well. Thank you, Mr. Handelman. Ms. Thompson, nice to see you whenever you're ready. Good morning. Elizabeth Thompson on behalf of Plaintiff of Illinois Tamale Company. Since this is a cross appeal, if your honors would allow me to reserve a minute of time to address any issues that are raised on our cross appeal, I would appreciate that. Thank you. I want to start by looking at the dictionary definition that the district court relied on. Miriam Webster. Before we get there, I want to talk about the general standard for preliminary injunction. Yes. You've argued that the standard should be better than negligible, but the Supreme Court has rejected that. I know there's some old case law of ours that says that, but it's pretty clear that the standard is more than a mere possibility of success. That's correct, and I think that we have established more than a mere possibility of success, and I know that you asked counsel a question about whether or not the district court relied on that better than negligible standard. It did not. If you look at that court's opinion, it never uses that language. It doesn't use either one. Correct. It does not use either one, but I think that we've established clearly under the lesser standard but also under the more significant standard, we've established a likelihood of success, and so I don't think the district court relied on that wrong standard. So as I was saying, Miriam Webster defines puff as a light, round, hollow pastry. Il Taco's pizza puff is an iconic Chicago food and is made from a flour tortilla filled with ingredients typically found in a pizza. Little Caesar's product is, in the words of the district court, a pizza muffin or a pizza cupcake or a pizza bite. Neither product is made from puff pastry. Neither product can be considered light by any stretch of the imagination, and neither product is hollow. And if you're not familiar with the products, there's pictures of both Little Caesar's product and Il Taco's product in the appendix, A23 for Little Caesar's product and A25, A309 through 310 for Il Taco's product. In determining the validity, the court applied the exclusive descriptor test, language picked up from Thai. Again, the Supreme Court has made clear that the test is primary significance as opposed to exclusive descriptor. The district court applied the wrong test here. How can you prevail given that it applied the wrong test? So I don't agree that it applied the wrong test. I think that the language that it picked up from this court's prior decisions, which is also in a number of other decisions that we've cited in our brief. Are you defending the exclusive descriptor test, or are you saying that the court applied the primary significant test? I don't think the court used the words primary significant test. Correct. But I think that it relied on language from this court's and other decisions that talks about the exclusive descriptor, which I think given what the court did then in looking at all of the different evidence that Little Caesar's put in front of it, that it doesn't matter whether or not it used the words primary significance or exclusive descriptor. Do you agree primary significance is a test? I do. It's in the statute, yes. Go ahead. I'm wondering how you're able to say that it didn't exclusively rely on the exclusive descriptor test when it has a clear holding that other people are able to sell products without using the word puffs, similar products without using the word puffs. And so that in the district court's view showed there was an ability to market a product without the word puff. So it seems by my reading the district court did go in on the exclusive descriptor. Where are you seeing the analysis showing something different? So I agree with you. The district court did look at other competitive products that are very similar products like Hot Pockets that obviously do not use the language or the words pizza puff to describe their product. The district court did do that, absolutely. But the district court also looked at the survey evidence, and I know that you all talked about that. It found it somewhat compelling but also looked at other cases that said 10% can be enough to show a likelihood of confusion. Well, when you say other cases, the court really only quoted, again, Ty. I don't think in the survey, when it was talking about the survey, it was quoting Ty. When the court mentioned that even 10% could be a problem, that's a quote from Ty in the district court's opinion. And if you give me just a second because there were some other... It's A2 in the supplement, and the court quoted its last paragraph. And the court only relied on Ty. Oh, and I'm sorry, I was looking for the cases we cited on page 3 of our gray brief. We cited a number of other cases since Ty that have looked at that language, the exclusive descriptor language. And in applying the primary significance test, essentially it's one of the factors that both this district court looked at and other courts have looked at in determining whether or not a mark is generic. But the court goes on to hold, following what Judge Jackson-Humey just pointed to, to say the evidence calls into question whether the trademark has gone so far toward becoming the exclusive descriptor of the product. There's no mention or analysis of primary significance here. I don't disagree with you that the district court does not use the words primary significance. But even without using the words, it's not using the concept. Primarily significant is different than exclusive. I don't disagree with that either, but I think that it is using the primary significance test when you look at... The district judge looks at the dictionary definition, the Merriam-Webster dictionary definition. One of the issues with the dictionary definitions that were submitted by defendants in this case is those... It was essentially one crowd-sourced dictionary definition that they found in various different sources and gave to the court. The court, although doesn't necessarily use the language, I'm not looking at those. I'm looking at Merriam-Webster. He does look at Merriam-Webster, which I think was the appropriate thing to do here. And he does analyze a number of the other things that defendants submitted here to try to establish that the primary significance of pizza puffs was a product. I have a question about the crowd-sourced dictionaries. Normally in our business, they're not our go-to. But here in trademarks, our job as a court is to determine from a consumer's perspective what a consumer thinks something means and whether a consumer considers something generic versus a brand name. So why wouldn't a crowd-sourced dictionary be precisely the kind of evidence that could help us determine whether consumers think something is generic or not? I think the problem with the crowd-sourced dictionary in general is that it is something that can be edited by anybody. And we don't know where it's coming from. I think when you look at it, and especially here when we do have a more reputable dictionary that does define the term, I think that that should control over the other things. Also, and I think as counsel conceded, the dictionary definitions alone are not going to be dispositive as to what the primary significance of a term is. But it really was one single crowd-sourced definition. We don't know where it comes from. It's just been cited multiple times. Ms. Thompson, can I ask you a question about the arguments that Little Caesars makes about fair use on pizza puffs? The fair use affirmative defense, as you know, has three prongs to it. I want to focus on the second one, the descriptiveness aspect. Yes. What, in your view, is the legal standard for measuring descriptiveness for purposes of applying the fair use doctrine? I mean, I think it's the same as measuring descriptiveness as a trademark in general, whether or not the term describes the product. It answers the question of what are you versus where do you come from. And in this case, it's a question of fact. So I think that this court reviews the decision of the district court on a clear error standard. And I think that applies to everything that we're talking about here today because this is in front of this court on a preliminary injunction. The district court had an evidentiary hearing, took testimony from four witnesses. So on all of that, he's in the district court. So legally, you think it just mirrors the descriptiveness aspect on the protectability side of the analysis? I do. I think it has to be descriptive of, and in this case, it's descriptive of the defendant's product. Okay. Can I ask you a hypothetical? Sure. Okay. Take the ad that has been the one of real focus where Little Caesars has crazy puffs and then in that subordinate text. Yes. Okay. And suppose the subordinate text, instead of saying four handheld pizza puffs, said four handheld small puffy pizzas. Okay. Okay. Yes. Descriptive? I don't know because I don't know how they're puffy. And I think that's the problem, is that what we've raised to the district court and also in our briefs to this court, is there's nothing about Little Caesars product that is puffy. And if you look back at the dictionary. Well, other than the fact that they look like a muffin and it wouldn't be crazy to call a muffin kind of puffy in appearance. I guess I don't follow that line of reasoning. I don't think that a muffin is necessarily puffy. Puffy is, at least when you look at the definition from Merriam-Webster and as I understand the term, is something that's light and airy. But hang on. In your answer to Judge Scudder, do you run into our precedent that whether a use is descriptive for the purpose of fair use analysis, it doesn't turn on the accuracy of the description. It turns on whether something's being used in a descriptive manner. So a company could describe something poorly, which is what you're suggesting. Sure. How on earth could they call it a puffy, small puffy pizza or a pizza puff is more like a cupcake or a muffin. But that goes to the accuracy, not the manner in which the company is describing or using the words. I don't disagree with that. But I think focusing back on the ad that Justice Scudder was just looking at, it does say four handheld pizza puffs. And then underneath that is additional descriptive language that says what it is. See, that's why I tend to think it's descriptive. And all I was doing with the hypothetical is just coming up with a play on words for something. And I think why would they say something like small puffy pizzas. I think to try to convey to somebody that if they're going to buy the product, it's going to be sufficiently filling. You know, that way you get four of these things for four bucks, and it can kind of serve as lunch. It could definitely. I mean, that's what I think is. I mean, I'm just looking at it and trying to think what is the term trying to connote. It's trying to connote a description of what somebody's about to buy. Well, respectfully, I disagree with that. But I think that the language underneath it is a description of what the person is trying to buy, regardless of whether or not that language could be considered descriptive for the fair use. So how is that not fair use stuff? Well, I think that the—I'm sorry to interrupt. Oh, go ahead. You're fine. I think that they haven't met the other elements either. Although the district court focused only on the descriptive nature, they are also using it as a mark. I know it's a three-pronged test, and you're right to emphasize that. Just focusing on that descriptive aspect of it, when they say forehand held, that part of it definitely seems descriptive. I agree, and the district court also went through that. And then the words below it, the ingredients seem descriptive, like what it contains, pizza filling and what have you. Right, and I think that—and I'm sorry if I didn't mean to interrupt. You're fine. Keep going. I think that in the district court, this exact conversation was had with the district court judge, and he said, okay, four, yes, there's four of them, no question. Handheld, that means you can hold them in your hand. Pizza, yes, they're pizza because they have pizza flavors, ingredients, and all of that. The issue the district court and what we're arguing to this court had was with the word puff. He said, how are these puffs? And that was not a question that could be answered by Little Caesars. But that seems to go to accuracy. The district court seemed to say that the defendant's—it's not apparent that the defendant's product is a puff, like the plaintiff's product. It didn't address the more general, this is being used to describe a characteristic as opposed to being the same product, which is not what you're allowed to do under the law for fair use descriptiveness. So I want to be cognizant of my time. I don't think that it's descriptive of plaintiff's product either. So I just want to be clear about that, that we've never made the argument that puff is descriptive of plaintiff's product either. But I don't think that you can use somebody else's trademark and fall back on the fact that, oh, yeah, well, it just wasn't a very good description of what we were trying to say. But that's not what I'm saying. I'm saying the court seemed to think that it had to be a puff as opposed to have puff characteristics. And those are different. And that's—based on the language in the court's opinion, that's what it seemed like the court did. I actually think that if you look at the transcript of the preliminary injunction hearing and the conversation the court had— I'm looking at the court's ruling, which is what's on appeal. Sure. Absolutely, it is. But I think that what the court was doing was saying that there's nothing about this product that has the characteristic of being puff. It's hard to take that from the order. It's hard to see that. Yeah. And I understand that. And I think that there's more information when you look at the preliminary injunction hearing. But again, we have to look at the order. This is the part of the order where the district court said it looks to the district court more like a mini pizza, a pizza muffin, a pizza cupcake, or a pizza bite. Yes. Okay. And you think, well, I mean, maybe, but why doesn't it also look like a puff? I think the question just comes back to— In other words, I don't—I'd say, like, could you call that thing a mini pizza? Yeah, probably. But why couldn't you call it a pizza puff, too? Well, I think you can't call it a pizza puff because that's a trademark term, and the puff— Well, under the fair use doctrine, descriptively. Yes, I think the problem with it is that what is a puff? A puff is a light, round, hollow pastry. That's not what is used as crazy puffs. Okay. I'm going to—any further questions? Okay. We'll give you the minute you asked for.  I appreciate that. You're quite welcome. Thank you. No problem. Mr. Handelman, you had some time left. You're welcome to use. Thank you, Your Honor. Just very quickly, with respect to fair use, I think this court has made it clear that the descriptiveness prong requires only that the term describe a characteristic of the product. We would, in conclusion, this court should affirm the denial of the preliminary injunction as to the crazy puffs mark. The district court's finding of no likelihood of confusion is fully supported by the facts and the law of this circuit and is not clearly erroneous. Were you able, Mr. Handelman, during the time your opponent was arguing, determine if you are arguing the district court applied the wrong preliminary injunction standard, or are you not arguing that? We're not arguing that. This court quoted Grubhub saying that it is likely to succeed on the merits, and we're saying that the plaintiff is not likely to succeed on the merits. This court should apply the correct legal test of genericness on the issue of validity to reverse the preliminary injunction against the phrase for handheld pizza puffs. The genericness test applied by the district court is contrary to this court's precedent. It's contrary to the statutory standard in the Lanham Act. And it's also at odds with the policy of trademark law to prevent the monopolization of English, common English words. The procedural posture of this case tracks that of Miller Brewing, which is where light beer was held to be generic for a type of beer. And also the Milmar case where warehouse shoes was found to be generic for a retail store selling discount-priced shoes. In both of those cases, the lower court found the market issue valid and then granted a preliminary injunction. And on appeal, this court found the mark generic, both light and warehouse shoes, under the proper legal test, primary significance, and reversed the preliminary injunction on those grounds. So we respectfully request this court to correct the legal error below and to reverse the district court's grant of the preliminary injunction. Thank you very much for your time. You're quite welcome. Ms. Thompson. Thank you. I appreciate the extra minute. I just want to very briefly address our cross-appeal. We have cross-appealed the district court's denial of the preliminary injunction on Crazy Puffs versus Puffs. As your honors have recognized, the district court did find that Puff was a protected mark. It did, however, find that there was no likelihood of confusion. We think we've submitted significant reasons why that decision was a clear error, not least of which is the actual confusion that we've submitted from numerous social media posts. And I think this maybe goes back to the question about crowdsourcing and isn't that the evidence of what the public thinks. I think that same argument can be applied to the social media information that we submitted to the district court, and the district court erroneously said he could not rely on. So for those reasons, unless your honors have any additional questions, we'd ask that the decision granting the preliminary injunction is affirmed, and the decision denying on the use of Crazy Puffs is reversed. Okay. Thank you. You're welcome. Ms. Thompson, thank you and your colleague. Mr. Handelman, to you as well and your colleague. We'll take the consolidated appeals under advisement with thanks to both sides. Thank you.